706 P.2d 364

**Ruth MARKOWITZ and David Lee Markowitz, Plaintiffs-Appellants,**

v.

**ARIZONA PARKS BOARD and State of Arizona, Defendants-Appellees.**

**No. 18033–PR.**

Supreme Court of Arizona, En Banc.

Sept. 5, 1985.

Reconsideration Denied Oct. 16, 1985.

Howard, DeRoon & Seyffer by Louis De-Roon III, Phoenix, Kreinces, Hemley & O'Brien by Leonard Kreinces, New York City, for plaintiffs-appellants.

Teilborg, Sanders & Parks by John C. Gemmil, James A. Teilborg, Phoenix, for defendants-appellees.

FELDMAN, Justice.

Ruth Markowitz (plaintiff) brought this action on behalf of her son, David Lee Markowitz (David) to recover for injuries sustained by David as a result of a dive into Lake Havasu. Lake Havasu Recreation Area is owned by the United States government and leased by it to the state of Arizona. Plaintiff also named Joseph T. Falline, Commissioner of the Arizona Land Department, and Michael A. Ramnes, Director of the Arizona Park Board, as defendants. These claims were dismissed by the trial court. The state, the only defendant remaining, moved for summary judgment, primarily claiming that it had breached no duty owed to David. The trial court granted summary judgment in favor of the state and the court of appeals affirmed, one judge concurring specially and the oth-

er judge dissenting. We have jurisdiction pursuant to Ariz. Const. art. 6 § 5(3). We granted review to again examine the theory of duty. Ariz.R.Civ.App.P., Rule 23, 17A A.R.S.

## FACTS

The facts are not greatly in dispute. In June of 1975, David, then fifteen years of age, went to Lake Havasu with a group of friends. The group camped at a site known as "Three Dunes" and enjoyed two days of water skiing and camping. On the third day, one of David's friends swam and dived in a cove not directly visible from the campsite and located approximately sixty yards away. David's friend told the rest of the group about the cove and some of the party, including David, took the boat to the cove around 7:00 p.m. in the evening.

David had not seen the cove before. Without entering the water to check its depth, he climbed the path toward what looked to him to be a diving spot. No signs prohibiting diving or warnings of any kind were posted in the area or at the park entrances. David described the path leading to the diving spot on the cliff as "well worn." From the diving spot he looked down, saw the cove and noticed that there were about fifteen people swimming and wading in the water below. The person in front of him made a "flat" dive and swam away unharmed. David then dived from the same spot and hit his head on a shallow ledge or sandbar below the surface. As a result of the injury sustained he is permanently paralyzed. He testified that he saw neither the ledge nor sandbar before his dive, apparently because his view of the lake bottom was obscured by ripples in the lake's surface and because the light was diminishing in intensity.

David was a very good swimmer and had taken both life saving and scuba instruction. He admitted in his deposition that he was aware at the time of the accident that one should check the depth of water before diving into it. He also admitted that he was aware that it was dangerous to dive in shallow water or in water of unknown

depth. He stated, however, that he would not have dived in the cove if he had seen a sign warning of dangerous diving conditions at this area, or if he had seen a sign at the entrance indicating that diving was prohibited in all areas of the park. He dived into the water because neither type of sign had been posted, other people had evidently used the "well worn" path to the diving spot, fifteen people were swimming or wading in the water in the cove, and because he observed his friend dive before him. The trial court granted the state's motion for summary judgment. The court of appeals, 146 Ariz. 260, 705 P.2d 937, affirmed, holding that the state owed no duty to David and, even if it did, the injuries were not proximately caused by any breach of that duty. The concurring opinion took the view that there was duty but no negligence. The dissent argued that duty existed and that there were questions of fact on the issues of negligence and causation.

## DUTY

As the court of appeals notes, a negligence action may be maintained only if there is a duty or obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983). The issue of duty is usually one for the court as a matter of law. *Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983). In the present case, the court of appeals held that the state owed no duty to David because "the natural environment did not present an unreasonable risk of harm," and because the danger was open and obvious. 146 Ariz. at 264, 705 P.2d at 941.

The court stated:

> If a duty on the part of ... government to take steps directed toward the safety of the public as it encounters the natural environment were to exist, it is difficult to say where it would start and where it would end.

*Id.* at 263, 705 P.2d at 940. We disagree with the application of this concept to the present case. It may be a valid observation where the injury has occurred in areas to which the public is neither invited nor expected. But such reasoning is unpersuasive in the present context because the defendant invited and indeed encouraged David and others to come to a parcel of land specifically dedicated to extensive public use and enjoyment. The difficulties involved in taking steps directed toward the safety of the public in natural environments is certainly one factor to consider in determining whether the standard of care has been breached, but we cannot posit a rule of law that the state is relieved from all duty to those invited to use particular portions of public land, no matter what the hazard, simply because the state's parks are large and their terrain often inhospitable.

The issue cannot be resolved by inquiring whether the state has a duty to place warning signs at every hundred paces along the forty-five mile shoreline and on each of the thirteen thousand acres of desert comprising the park; instead, we must ask whether the state has some duty of care for the safety of those it "invites" to use its recreational areas and, if so, the nature of that duty. In casting the question in terms of the existence or non-existence of a duty to take specific steps, the court of appeals assumes that any duty found to exist would necessarily be absolute, and would thus require the state to patrol the entire wilderness area of the state to discover and warn of all conceivable dangers, no matter how open and obvious the risk or how remote or inaccessible the area. Such an interpretation of the concept of duty is incorrect.

We have previously explained that we disapprove of attempts to equate the concept of duty with specific details of conduct. *Coburn v. City of Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984). We there approved Dean Prosser's postulate that it is "better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation

for the benefit of the other ..." *Id.*, quoting W. Prosser & W. Keeton, THE LAW OF TORTS, § 53 at 356 (5th ed. 1984). We again point out that the existence of a duty is not to be confused with details of the standard of conduct. This incorrectly leads to attempts to decide on a general basis whether a defendant has a "duty" to post warning signs, *City of Phoenix v. Mayfield,* 41 Ariz. 537, 20 P.2d 296 (1933), fix potholes, *Vegodsky v. City of Tucson,* 1 Ariz.App. 102, 399 P.2d 723 (1965) or provide additional traffic signs, *Rodgers v. Ray,* 10 Ariz.App. 119, 457 P.2d 281 (1969). These details of conduct bear upon the issue of whether the defendant who does have a duty has breached the applicable standard of care and not whether such a standard of care exists in the first instance. *Coburn v. City of Tucson,* 143 Ariz. at 52, 691 P.2d at 1081.

The first question presented, therefore, is whether the state as a possessor of land is under *any* duty of care with respect to the safety of those it has *invited* to use the particular parcel of state land. Arizona recognizes that a possessor of land "is under an affirmative duty" to use reasonable care to make the premises safe for use by invitees. *Tribe v. Shell Oil Co.,* 133 Ariz. 517, 519, 652 P.2d 1040, 1042 (1982). In the case of invitees, the law generally recognizes that this standard of reasonable care includes an obligation to discover and correct or warn of hazards which the possessor should reasonably foresee as endangering an invitee. Restatement (Second) of Torts § 343; Prosser, *supra*, § 61 at 419, 426. The parties agree that David was an "invitee" on state land and that the state was the possessor of that land. That relationship imposes an obligation to take reasonable precautions for David's safety. The physical circumstances involving size, length of shoreline and nature of terrain affect the determination of what is reasonable, not the existence of a duty to protect the safety of users of the park.

The court of appeals also based its conclusion regarding the lack of duty on the fact that "water of unknown depth" was a

known or open and obvious danger. 146 Ariz. at 264, 705 P.2d at 941. Again, the possibility that the defect or hazard is "open and obvious" is a factor to be considered in determining whether the possessor's failure to remedy the hazard or provide a warning was unreasonable and therefore breached the standard of care; it is not a factor to be used in determining the very existence of the duty which is a precondition for the exercise of the standard of care. *Beach v. City of Phoenix,* 136 Ariz. at 603, 667 P.2d at 1319. Although a land possessor is under a duty to his invitees, he is not ordinarily found negligent for injuries to those invitees from conditions which are open and obvious, nor for those which are known to the invitee. *Tribe v. Shell Oil, Co.,* 133 Ariz. at 519, 652 P.2d at 1042. Again, this is because it may often be said that the possessor is not negligent for failing to protect the invitee from dangers which are obvious to the latter. It is not because there is no duty. Thus, where the possessor should foresee that the condition is dangerous despite its open and obvious nature, neither the obvious nature nor the plaintiff's knowledge of the danger is conclusive. *Id,* citing Restatement (Second) of Torts, § 343A comment f; *Murphy v. El Dorado Bowl,* 2 Ariz.App. 341, 343, 409 P.2d 57, 59, (1965). Further, when the possessor is a governmental entity it has a "special reason to anticipate that the public, pursuing a right of entry and use to which they are entitled," may expose themselves to "known or obvious dangers" rather than forego the right of use. *Beach v. City of Phoenix,* 136 Ariz. at 603, n. 1, 667 P.2d at 1316, n. 1 citing Restatement (Second) of Torts § 343A comment g.[1] In addition, "an invitee may anticipate that the premises are reasonably safe for his intended use." Page, J., THE LAW OF PREMISES LIABILITY, § 4.16, 94 (1976). ·

Our opinions in *Tribe, supra, Coburn, supra,* and *Beach, supra,* have evidently failed to clarify our views of the duty problem. We therefore summarize the relevant principles.

■ 1. The question of duty is decided by the court. The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risks. *Prosser, supra,* § 53, at 356–359; *see, also, Keckonen v. Robles,* 146 Ariz. 268, 705 P.2d 945 (1985) (holding that a negligent host was under no duty of care to the victim injured by an automobile driven by an intoxicated guest). In the context of this case, therefore, the concept of duty is not a question of whether the danger was natural, artificial, obvious or whether the defendant should have searched for, warned of or removed the danger or have taken any other particular action. The question is whether defendant was responsible to take any precaution for the safety of David or other invitees. Would the state have been liable even if the park ranger, knowing of the hazard, had sat on the rock, watched David get ready to dive and said nothing? Those who would answer that question in the negative find no duty. To those who would answer affirmatively (*see, Harris v. Buckeye Irrigation Company,* 118 Ariz. 498, 578 P.2d 177 (1978)) the question is was there a breach of the duty?

■ 2. If there is a duty, then the law requires that the defendant conform to a standard of care. In negligence cases that is usually "reasonable care under the circumstances," though it may differ, depending on the relationship. Thus, doctors may be required to have and exercise the care and skill usually had and used by other

---

**1.** Also *see especially,* § 343A(2): "In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land ... is a factor of importance indicating that the

harm should be anticipated." This, of course, does not mean that the state's duty—to use reasonable care—is any higher. It is only a factor to be considered in deciding what is "reasonable."

doctors, land owners may be required to take reasonable precautions to make the premises safe for invitees or to warn licensees of known dangers, etc. All of these standards carry with them an implicit requirement that defendant act reasonably in light of the known and forseeable risks. It is here, in determining whether the defendant acted reasonably or negligently, that the law concerns itself with specifics of defendant's conduct. In the context of this case, it is here—on the question of reasonable precautions for the safety of invitees—that the law asks whether defendant acted reasonably in not posting signs prohibiting diving in the park, in not discovering the danger, in not warning or not removing the danger. What is reasonable on the one hand or negligent on the other will depend on the circumstances—was the danger open and obvious, was it natural or artificial, was the park small or large, was the area often used or remote and inaccessible? Were precautions easy to take or difficult and expensive? All these are factors which determine the reasonableness of the defendant's conduct; they are questions of negligence, not duty. Sometimes, of course, it may be possible to say as a matter of law that particular conduct was or was not negligent. Thus, in *Coburn, supra,* we held as a matter of law that the city was not negligent in failing to remove a tree or take other precautions to obviate the risk of danger to a child who rode his bicycle on the wrong side of the street and failed to stop at the stop sign. This was not because the city had no duty to children on the streets, nor because it had no duty to negligent children on the streets, but because reasonable people would all agree that the city had fulfilled its duty to act with reasonable care. However, one can readily imagine circumstances in which the city's failure to take precautions to protect such children would be actionable negligence. For instance, the street in question might be the quickest, most convenient and most commonly followed route between the neighborhood elementary school and the park where the city was promoting after school recreation for children in grades 1 through 3. Under such circumstances, reasonable people might differ on whether the city should have foreseen the risk and taken precautions to protect young children who rode their bicycles on the wrong side of the street and ran a stop sign in their haste to get to the park.

In the context of this case, one may say as a matter of law that the government as a landowner has a duty of reasonable care to those whom it invites to its parks. One may say as a matter of law that the government would *not* be negligent in failing to post a sign warning visitors to the Grand Canyon that it is a long way to the bottom and those who stand too close to the edge may lose their balance, fall and get hurt. Under different circumstances—where, for instance, the government knows of soft, unstable earth at a viewpoint—reasonable people might differ on whether the government was negligent for failing to post a sign to warn taxpayers eager to enjoy the esthetic delights of the canyon that they must be especially careful to stay away from the edge. To postulate that the possessor of land has no duty at all to protect its invitees or warn of specific types of danger is to postulate that it can never be liable, no matter what the circumstances. We decline to adopt such a view. *Harris v. Buckeye Irrigation Co., supra.* When the government invites citizens onto public land—and this opinion has no application to areas where the public is not invited—it is under a duty to take some precautions to avoid injury to those invited.

## NEGLIGENCE

Obviously, it may be said in some cases as a matter of law that defendant's actions or inactions do not breach the applicable standard of conduct. *Coburn v. City of Tucson, supra.* The test for whether conduct is negligent is whether there is a foreseeable risk of injury from the conduct. *Donnelly Const. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984). Therefore, the general rule to be applied is that where reasonable people

could differ as to whether the danger of some injury is foreseeable, the question of negligence is one of fact for a jury to decide. *City of Phoenix v. Weedon,* 71 Ariz. 259, 264, 226 P.2d 157, 160 (1950); *Beach v. City of Phoenix,* 136 Ariz. at 604, 667 P.2d at 1319. The concurring opinion of the court of appeals took the view that there was duty, but no evidence of breach. We do not believe that it can be said in this case that all reasonable people would agree that danger was unforeseeable or that the state had taken reasonable precautions to obviate the danger. The evidence indicates that the cove attracted swimmers, that it was used often and at different times in the day and was located no more than 200 yards from a designated park campsite. The area was evidently one where the state expected people to camp. Other campsites were located in close proximity. There was also evidence that park rangers patrolled the lake every few days and visited the campsite daily to collect fees. From these facts, one might reasonably conclude that the possessor of the property should have inspected the areas which were openly used for swimming and related activities in order to discover dangerous conditions, and either remove them or give warning of their existence. Prosser, *supra,* § 61 at 426–427; Page, *supra,* § 4.8 at 82, Harper & James, THE LAW OF TORTS, § 27.13, 1491–1492 (1956). On the other hand, the finder of fact might conclude that given the nature of the park and its terrain it would not be reasonably feasible for the state to inspect even a location such as the cove in question for hidden dangers. Page, *supra,* § 10.19 at 259–60. Alternatively the fact finder might conclude that although it was unreasonable to expect the state to inspect for and warn of dangers, the concept of reasonable care would require it to post signs to warn park visitors that no such inspections were being made and that diving was therefore prohibited at any place. Many conclusions as to what is "reasonable care" are possible under the fact situation presented by this case. We believe that none is applicable as a matter of law. Contrary to the concurring opinion below, sum-mary judgment cannot be supported on the theory that, as a matter of law, the state was not negligent.

## PROXIMATE CAUSE

The court of appeals also held that even if the state had breached a duty owed to David it could not be held liable because its negligence was not the proximate cause of David's injury. The question of proximate cause is usually for the jury and it is only when reasonable persons could not differ that the court may direct a verdict on the issue. *Harmon v. Szrama,* 102 Ariz. 343, 345, 429 P.2d 662, 664 (1967); *Flowers v. K-Mart,* 126 Ariz. 495, 497, 616 P.2d 955 (Ct.App.1980). The opinion of the court of appeals noted that David had admitted that he was aware of the danger of diving into shallow water and was also aware of the danger of diving into water of unknown depth. The court concluded, therefore, that the lack of a warning sign giving David "information he already knew was not a cause of [David's] injuries." 146 Ariz. at 264, 705 P.2d at 941. We disagree.

Portions of David's deposition and affidavit indicate that he thought the water was not shallow because other people had dived into it and that if he had been told it was shallow water he would not have dived. Certainly, reasonable persons could find that if adequate warning had been given, David would have seen the sign and would have avoided diving. It would take a very foolish person to dive off a cliff in the face of a sign that said "Do not dive, shallow water." Nothing in David's deposition can lead one to conclude as a matter of law that he would have been so foolhardy. It is one thing to know that it is dangerous to dive in shallow water. One may dive with such knowledge, thinking that the water *is not* shallow. It is quite different to dive knowing that the water actually *is* shallow.

The issues raised by David's admissions with regard to knowledge of general danger are really matters of contributory negligence. *See Hawk v. City of*

*Newport Beach,* 46 Cal.2d 213, 293 P.2d 48 (1956) and *Miller v. United States,* 597 F.2d 614 (7th Cir.1979). Proximate cause may be found even where the defendant's act or failure to act is not the sole cause of injury. *Wisener v. State,* 123 Ariz. 148, 150, 598 P.2d 511, 513 (1979). Questions of contributory negligence are always for the jury under our constitution, and are not a proper subject for summary adjudication. Ariz. Const. art. 18, § 5; *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967). A contributory negligence issue cannot be taken from the jury by the simple expedient of calling it an issue of causation. Defendant gave no warning that there was a specific danger or that all diving was prohibited. For summary judgment purposes we assume the truth of David's statement that he would not have dived if such specific warning had been given. One could say that David's dive, with knowledge of inherent, general risk may be contributory negligence. This is a jury question in Arizona. One cannot say, however, that defendant's failure to discover and remedy the danger or give warning was not a cause of the dive and the consequent injury.

CONCLUSION

We conclude, therefore, that the trial court and the court of appeals incorrectly decided the issues of duty and proximate cause. The concurring opinion incorrectly concluded that there was insufficient evidence to create a question of fact on the issue of negligence. We agree with the dissent that there is duty and there are questions of fact on the issue of negligence and proximate cause. The summary judgment granted by the trial court is reversed. The opinion of the court of appeals is vacated. The case is remanded for further proceedings.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, specially concurring.

Although I concur with most of the majority opinion, I do not concur with the rationale about "duty." In *Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078 (1984) this court retreated from the concept that duty could be defined in terms of specific types of conduct, and the court adopted the broad notion of duty.

Contrary to the position of the majority, I believe that it is good policy whenever possible to define duty in specific terms. There is enough vagueness in the law of negligence, and efforts to define duty in terms that are understandable and easily applied should be encouraged. There is much uncertainty in life, and efforts to give some certainty to what is expected in relationships between citizens and between citizens and their government seem desirable.

The author relied upon by the majority in *Coburn* notes that the concept of duty and the details of the standard of conduct are "one of convenience only, and ... the two are correlative, and one cannot exist without the other." W. Prosser & W. Keeton, *The Law of Torts* # 53 at 356 (5th ed. 1984). With such interdependence, it does not appear that our former efforts to define duty in terms of specific conduct were illogical or bad judicial policy.

Subject to the above reservations, I concur in the majority opinion.