**Grace KEAMS, et al., Plaintiffs,**

v.

**TEMPE TECHNICAL INSTITUTE, INC., et al., Defendants.**

**No. Civ. 91–0728–PHX–ROS.**

United States District Court, D. Arizona.

July 10, 1998.

**1120**

Bruce A. Burke, Erik M. O'Dowd, O'Dowd, Burke & Lundquist, P.C., for Grace Keams, Jolene Cordero, Bunny McCorkey.

Ed Nabors, Mesa, AZ, pro se.

Martha Nabors, Mesa, AZ, pro se.

Richard A. Segal, Gust Rosenfeld, PLC, Phoenix, AZ, Elizabeth Ann Faulkner, K.H. Hunnicutt & Associates, Tempe, AZ, for United Student Aids Funds Inc.

Joseph Dean Romley, Michael J. Farrell, Jennings Strouss & Salmon PLC, Phoenix, AZ, David L. White, White Cummings & Longino PC, Phoenix, AZ, for National Ass'n, of Trade and Technical Schools.

## ORDER

SILVER, District Judge.

Pending before the Court is Defendant United Student Aid Funds' Motion to Dismiss.

## BACKGROUND

Plaintiffs are a class of former students at Tempe Technical Institute ("TTI"), a for-profit vocational school that operated from September, 1988 until April, 1990. In order to attend TTI, Plaintiffs obtained federally-guaranteed student loans. Defendant United Student Aid Funds ("USAF") is a non-profit private corporation engaged in the business of insuring lenders and secondary market loan holders against loss on student loans. USAF does business in Arizona as the Arizona Education Loan Program, and has been Arizona's designated guarantor of student loan programs since 1981.[1] *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1483 (9th Cir.1995). All government funding comes from the federal government pursuant to the Higher Education Act ("HEA"), 20 U.S.C. § 1070, *et seq. Id.* & n. 2.

Plaintiffs, who are primarily Native Americans, claim that they were recruited from Northern Arizona and New Mexico to attend school in Phoenix and Tempe with promises of practical training, financial aid, guaranteed housing, and job placement assistance. According to Plaintiffs, TTI kept none of these promises and provided Plaintiffs with an inferior education. In January 1989, USAF conducted an audit of TTI which revealed serious violations of federal student loan regulations. (Am. Compl. ¶ 166.) In September 1989, USAF again reviewed TTI and "concluded that TTI has committed serious program violations." *Id.* ¶ 168. As a result, USAF prepared a complaint against TTI and held a hearing in March 1990. *Id.* ¶ 169. After the hearing, USAF terminated TTI's participation in its student loan program. *Id.* TTI soon closed and filed for bankruptcy under Chapter 7 of the Bankruptcy Code.

Plaintiffs commenced this action in the Superior Court of Maricopa County, and it was removed to this Court on May 8, 1991. Plaintiffs filed an Amended Complaint on November 3, 1995. Named as Defendants were a number of individuals, financial insti-

[1]. Any state wishing to allow its students to obtain federally guaranteed loans must either establish a state guaranty agency or designate a private nonprofit guaranty agency to administer the loans. *Connecticut Student Loan Foundation v. Riley,* 948 F.Supp. 156, 157 (D.Conn.1996) (citing 20 U.S.C. § 1078(b)(1)(K)).

tutions, and educational organizations. After seven years of litigation, all defendants have been dismissed from the case with the exception of USAF.[2] USAF filed a Motion to Dismiss on February 25, 1998. Plaintiffs filed a Response on March 18, 1998 and USAF filed a Reply on March 24, 1998.

### LEGAL STANDARD

In determining whether a complaint states a claim for which relief can be granted, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). An inquiry into the adequacy of the evidence is improper when deciding whether to dismiss for failure to state a claim. *Yamaguchi v. United States Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir.1997). A complaint should not be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.), *cert. denied*, 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 536 (1992).[3]

### LEGAL DISCUSSION

Although Plaintiffs alleged numerous causes of action against USAF in their Amended Complaint, they have abandoned all their claims with the exception of a claim of negligence. (Pls.' Resp. at 4 n. 1.) The gravamen of the negligence claim is that USAF owed a duty of reasonable care to Plaintiffs once it assumed inspection and enforcement responsibilities as a guaranty agency, and that it breached that duty by failing to investigate allegations of mismanagement by TTI in a timely fashion. Specifically, Plaintiffs allege that USAF knew of serious problems at TTI for nine months before it filed a complaint against TTI and instituted proceedings to terminate TTI's participation in USAF''s student loan program.

In its motion to dismiss, USAF argues that it owed no duty to Plaintiffs. In their response, Plaintiffs dispute this argument and contend that USAF owed Plaintiffs a duty under federal regulations and state law. The Court will examine each of these arguments in turn.

#### 1. Federal Law

■ Plaintiffs first contend that federal student loan regulations impose certain duties on guaranty agencies such as USAF, and argue that these duties exist for the benefit of students such as Plaintiffs. 26 C.F.R. § 682.401(b)(19)(ii) provides: "The guaranty agency shall ensure that its pro-

---

**2.** In an Order filed April 27, 1995, the Court dismissed Plaintiffs' claims against two Defendants: the National Association of Trade and Technical Schools ("NATTS"), and the Accrediting Bureau of Health Education Schools/Programs ("ABHES"). The Court also entered final judgment pursuant to Fed.R.Civ.P. 54(b) as to these two Defendants on May 8, 1995 (doc. # 246) and May 22, 1995 (doc. # 249), respectively. This Order was affirmed by the Ninth Circuit in *Keams v. Tempe Technical Institute*, 110 F.3d 44 (9th Cir.1997). In their Amended Complaint, filed on November 3, 1995, Plaintiffs renamed these two entities as Defendants and the court's docket sheet continues to list them as parties to this action. The allegations against these two Defendants in the Amended Complaint, however, are identical to the claims that have already been dismissed by this Court. A judgment under Rule 54(b) is "a judgment for all purposes" and "is res judicata as to the claims adjudicated." James Wm. Moore, 10 *Moore's*

*Federal Practice* § 54.26[2] at 54–90 (3d ed.1998). Because judgment has already been entered in favor of these Defendants, the Court will again dismiss them from this action.

**3.** In their Response, Plaintiff submit a large number of documents in support of their claim that USAF knew of the poor manner in which TTI was operated, and urge the Court to convert the motion to dismiss into a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). The motion, however, may be resolved without relying on documents outside the pleadings and the motion will not be converted. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir.1996) (conversion required "if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, *and* if the district court relies on those motions") (emphasis added). The Court will assume, as it must, that all of Plaintiffs' allegations about USAF's actions are true.

gram and all participants in its program at all times meet the requirements of subparts B, C, D, and F of this part." These subparts, found at 26 C.F.R. § 682.401(b)(19)(i), require the guaranty agency to establish and enforce standards and procedures relating to:

(B) School and lender participation in its program;

(C) Limitation, suspension, termination of school and lender participation;

(D) Emergency action against a participating school or lender;

(F) The timely filing by lenders of default, death, disability, and bankruptcy claims.

As USAF point outs, however, these requirements impose no direct duty on guaranty agencies. Rather, this is a list of provisions that the Secretary must include in a "basic agreement"[4] with a guaranty agency. 26 C.F.R. § 682.401(a), (b). Under this type of agreement, "a guaranty agency's failure to comply with any provisions of its contract or applicable law or regulations may result in the Secretary's withholding of reimbursements on defaulted loans," or the imposition of civil penalties. *Connecticut Student Loan Foundation,* 948 F.Supp. at 158. That is, the regulations impose requirements on the Secretary, not on the guaranty agencies.

Plaintiffs maintain that these requirements exist for the benefit of students, noting that the Ninth Circuit has held that "the HEA was enacted to benefit students" and that "the benefits of USAF flow directly to students." *Parks,* 51 F.3d at 1484, 1486. Even assuming that these requirements impose duties on guaranty agencies rather than the Secretary, there is little reason to conclude that these duties are imposed for the benefit of students. While Congress undoubtedly intended that the HEA would benefit students, 20 U.S.C. § 1070(a), the Ninth Circuit has recognized that the HEA serves other purposes: "One of the HEA's express purposes was to stabilize the GSL program by cutting the significant losses to the U.S. Treasury due to the costs and occurrences of defaults in the program." *Brannan v. United Student Aid Funds,* 94 F.3d 1260, 1264 (9th

Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2484, 138 L.Ed.2d 992 (1997). Thus, the HEA insures the stability of the student loan program and minimizes its cost to the federal government in addition to assisting students.

The regulations cited by Plaintiffs do not directly benefit the students. One of the statutes underlying the regulations at issue in this case, 20 U.S.C. § 1078, makes this point clear:

> The guaranty agreement—
>
> (A) shall set forth such administrative and fiscal procedures as may be necessary to protect the United States from the risk of unreasonable loss thereunder, to ensure proper and efficient administration of the loan insurance program, and to insure that due diligence will be exercised in the collection of loans insured under the program, including a requirement that each beneficiary of insurance on the loan submit proof that reasonable attempts were made to locate the borrower (when the location of the borrower is unknown) and proof that contact was made with the borrower (when the location is known).

20 U.S.C. § 1078(c)(2)(A). This statutory language illustrates that the regulations governing the Secretary's agreements with guaranty agencies protect the financial stability of the program, not the welfare of students. *See Pacific Coast Medical Enters. v. Harris,* 633 F.2d 123, 131 (9th Cir.1980) ("Existing regulations must be construed in light of the statutory mandates under which they issue.").

■ To sustain a negligence claim under Arizona law, "plaintiffs must establish that 'there is a duty of obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct.'" *Kearns,* 110 F.3d at 47 (quoting *Hamman v. County of Maricopa,* 161 Ariz. 58, 775 P.2d 1122, 1125 (1989)). Because the federal regulations cited by Plaintiffs do not exist for the direct benefit of the students and do not require USAF to engage in certain conduct,

---

4. An agreement enables the guaranty agency to participate in the guaranteed student loan programs and to receive the various payments and benefits related to that participation. 34 C.F.R. § 682.400(a).

they cannot form the basis of a negligence action.

### 2. State Law

■ Plaintiff also contend that state law imposes a duty on USAF, arguing that guaranty agencies assume the duties of a public or private inspector and that Arizona law imposes liability on inspectors who inadequately perform their duties.

Plaintiffs principally look to *Daggett v. County of Maricopa,* 160 Ariz. 80, 770 P.2d 384 (1989), in which the Arizona Court of Appeals found that a county could be liable for negligent inspection after the plaintiff was injured in a pool that had been approved by county inspectors. The court's holding rested on the existence of county regulations requiring inspection and approval of swimming pools, and the court concluded that the county created a special relationship with the plaintiff and assumed a duty "by enacting regulations that required it to approve and inspect swimming pools." *Id.* 770 P.2d at 386. This rationale, however, has no application in the instant case. As noted above, the federal regulations cited by Plaintiffs impose no duty on guaranty agencies such as USAF. The *Daggett* court made it clear that the claim was "not based on common law," but "instead that the county's duty was created by regulations that require county employees to approve and inspect [the] facilities for compliance with safety requirements." *Id.* 770 P.2d at 387. For that reason, Plaintiffs' reliance on *Daggett* is misplaced.

Plaintiffs also advance an argument under the common law of torts, contending that Plaintiffs were foreseeable victims of USAF's negligent conduct. USAF argues that it had no duty under the common law to act for Plaintiffs' benefit. The question of duty "is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 706 P.2d 364, 368 (1985). Here, Plaintiffs look to the Ninth Circuit's decision in *Parks* for the proposition that the relationship between USAF and the Plaintiffs created by the HEA "necessarily implies a duty or obligation which requires USAF to exercise a reasonable degree of skill, care, and diligence in carrying out those obligations." (Pls.' Resp. at 16.) As discussed in detail above, however, the HEA imposes no such obligation on guaranty agencies. Without the existence of a duty to act on behalf of Plaintiffs, USAF is not liable even if it acted negligently. *Markowitz,* 706 P.2d at 368 (if there is no duty, "the defendant is not liable even though he may have acted negligently in light of the foreseeable risks") (citing W. Prosser & W. Keeton, *The Law of Torts* § 53 at 356–59 (5th ed.1984)).

Accordingly,

**IT IS ORDERED** granting Defendant United Student Aid Funds' Motion to Dismiss (doc. # 416).

**FURTHER ORDERED** dismissing Defendant Accrediting Bureau of Health Education Schools/Programs and Defendant National Association of Trade and Technical Schools.

**FURTHER ORDERED** that the Clerk shall enter judgment in favor of all Defendants and dismiss this action.